**IN THE COURT OF APPEALS OF IOWA**

No. 19-0426
Filed June 5, 2019

**IN THE INTEREST OF L.M., C.K., and J.T.,**
**Minor Children,**

**S.M., Mother,**
          Appellant.
_____

          Appeal from the Iowa District Court for Warren County, Kevin Parker, District Associate Judge.


          A mother appeals the termination of her parental rights to three children. **AFFIRMED.**


          Julie A. Forsyth of Forsyth Law Office, P.L.L.C., Winterset, for appellant mother.

          Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

          M. Kathryn Miller, Des Moines, attorney and guardian ad litem for minor children.


          Considered by Vogel, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

A mother, Suzanne, challenges the termination of her parental rights to three children—eleven-year-old J.T., eight-year-old C.K., and five-year-old L.M. On appeal, she raises three claims: (1) termination is not in the children's best interests under Iowa Code section 232.116(2) (2018); (2) the juvenile court should have declined to terminate under section 232.116(3) because of the closeness of the parent-child relationship and because the children were in the legal custody of relatives; and (3) the Iowa Department of Human Services (DHS) did not provide reasonable reunification services because of the high level of turnover among the caseworkers assigned to the family.

After independently reviewing the record,[1] our conclusions mirror those of the juvenile court. Termination of Suzanne's parental rights serves the best interests of all three children. Neither the parent-child bonds nor the relative placements preclude termination. And while the rapid exodus of social workers was less than ideal for this family, it did not prevent the DHS from making reasonable efforts toward reunification.

Suzanne's methamphetamine use has resulted in the continued removal of the children from her care. They have been out of the home since March 2017. The DHS placed the oldest child, J.T., with his paternal aunt, where he would like to stay. C.K. and L.M. are living with their respective fathers. As the termination

---

[1] Our review is de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *Id.* Proof must be clear and convincing, meaning there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

ruling explained, Suzanne has been "in and out" of treatment throughout the case. She twice enrolled in in-patient treatment at the House of Mercy without success. She also has "shown very little consistency in visitation." She was in jail at the time of the hearing, awaiting trial on a charge of operating a vehicle without the owner's consent. The juvenile court terminated her parental rights under Iowa Code section 232.116(1), paragraphs (f) and (*l*).

On appeal, Suzanne does not challenge the State's proof for those statutory grounds. Instead, she argues termination is not in the children's best interests and two exceptions weigh against ending their relationships. *See* Iowa Code § 232.116(2), (3)(a), (3)(c).

Our analysis starts with best interests; our determination must track the factors in section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting use of an unstructured best-interests test). That provision focuses on the children's safety; the best placement for furthering their long-term nurturing and growth; and their physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2).

Suzanne recalls, before the DHS became involved with her family, she was "the consistent, single parent who provided for the children." By contrast, the children's fathers had little direct involvement.[2] But any history of positive caretaking by the mother does not insulate the children from her current

---

[2] Suzanne contends the juvenile court should have given her more time to meet with the fathers to craft a "bridge order" determining custody and visitation arrangements. *See* Iowa Code § 232.103A (allowing juvenile court to close a child in need of assistance case by transferring jurisdiction over the child's custody, physical care, and visitation to the district court through a "bridge order" if certain criteria are met). We find continued concerns for the children's safety precluded the use of a bridge order in this case.

methamphetamine addiction. A parent's serious, unresolved substance-abuse problem may prevent her from exercising the caretaking necessary to assure the children's safety. *In re J.K.*, 495 N.W.2d 108, 113 (Iowa 1993).

Suzanne also argues it is not in the best interest of these half-siblings to be in three different homes. It is true our courts prefer keeping siblings together. *In re A.M.S.*, 419 N.W.2d 723, 734 (Iowa 1988) ("[S]iblings should not be separated without good and compelling reasons."). But this preference is not absolute—it must yield to the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). The existing placements—while separating the half siblings—provide each individual child with the optimal kinship connections. Moreover, the record here shows the children know each others' paternal families and continue to interact. We reject Suzanne's best-interest challenge.

Once the State has proved a ground for termination, the parent resisting termination bears the burden to establish an exception under section 232.116(3). *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). Suzanne relies on two exceptions: first, under paragraph (a), "A relative has legal custody of the child"; and second, under paragraph (c), "There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Suzanne has not established either exception should stand in the way of termination.

Although J.T. is placed with an aunt, and C.K. and L.M. are placed with their respective fathers, legal custody of the children remains with the DHS. Accordingly, section 232.116(3)(a) does not apply. *See* Iowa Code § 232.116(3)(a) ("The court need not terminate the relationship between the parent

and the child if the court finds . . . [a] relative has *legal* custody of the child." (emphasis added)); *see also In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) ("Although section 232.116(3)(a) allows the juvenile court not to terminate when a 'relative has legal custody of the child,' A.M. is not in the legal custody of her grandparents." (internal citation omitted)).

Likewise, Suzanne's bond with the children,[3] as considered under paragraph (c), does not overcome the safety concerns stemming from her unresolved methamphetamine addiction. The DHS expressed concerns about Suzanne's noncompliance with drug screens, failure to complete mental-health services, and lack of stable housing. Her failure to follow DHS expectations overrides the exceptions cited.

Finally, Suzanne argues termination was improper because "the State did not provide reasonable reunification services." The State must show it has made reasonable efforts to reunify the family as a part of its ultimate proof the children cannot be safely returned home. *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). But the parent has a concomitant duty "to object to services early in the process so appropriate changes can be made." *In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000).

Suzanne complains about a lack of consistent expectations stemming from the high turnover rate among the DHS and Family Safety, Risk, and Permanency (FSRP) workers assigned to her case. Suzanne testified that during the twenty-two months the child-welfare case was open, she was assigned six different FSRP

---

[3] The record shows the children were happy and excited to see Suzanne during their visits.

workers and four different DHS workers, "who all had difference expectations and rules." She contends the moving goal posts hindered her ability to meet DHS's expectations.

Child-welfare experts acknowledge "fewer changes in caseworkers increase[e the] chance[] of stability for families and permanency for children."[4] But Suzanne does not assert that she objected to any inconsistency in the approach of the social workers before the termination hearing. We previously rejected a similar reasonable-efforts claim when the parent did not allege "what different or additional services should have been offered to her." *In re C.O.*, No. 04-1571, 2005 WL 159164, at *2 (Iowa Ct. App. Jan. 26, 2005). We reach the same conclusion here.

In a second challenge to reasonable efforts, Suzanne cites her limited visitation with J.T., the oldest child, who was in the care of his aunt. Suzanne testified J.T. was "very angry" with her and was unconcerned when his aunt was unable to bring him to visits. The FSRP worker testified J.T. attended visits consistently over the summer because "we had a worker bringing him." But J.T. missed several visits during the school year because his aunt had transportation issues or he did not want to see his mother. When the FSRP worker proposed the option of meeting J.T. at a more convenient spot, Suzanne said "she didn't want to do anything to make it easier on [the aunt]." Given the overall slate of services offered to Suzanne, we cannot find the missed visits with J.T. marked a failure of

---

[4] *See, e.g.*, Nat'l Child Welfare Workforce Inst., *Why the Workforce Matters* 1 (2016), http://ncwwi.org/files/Why_the_Workforce_Matters.pdf; *accord* Casey Family Programs, *How Does Turnover Affect Outcomes and What Can Be Done to Address Retention?* (Dec. 29, 2017), https://www.casey.org/turnover-costs-and-retention-strategies/.

reasonable efforts. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("[W]hat constitutes reasonable services varies based upon the requirements of each individual case.").

**AFFIRMED.**